Not Intended for Print Publication

# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF VIRGINIA
# BIG STONE GAP DIVISION

| | | |
|---|---|---|
| **BAHMAN PAYMAN, M.D.**, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 2:04CV00017 |
| | ) | |
| v. | ) | **OPINION** |
| | ) | |
| **LEE COUNTY COMMUNITY** | ) | By: James P. Jones |
| **HOSPITAL, ET AL.**, | ) | Chief United States District Judge |
| | ) | |
| Defendants. | ) | |

*Bahman Payman, M.D., Plaintiff Pro Se; Patrick T. Fennell, Magee Foster Goldstein Sayers, Roanoke, Virginia, for Defendants Lee Regional Medical Center, Gowdagere K. Udayakumar, and Susan Willis.*

The successful defendants in this civil case seek sanctions against the pro se plaintiff. Finding that the plaintiff's pleadings were factually insupportable, I will impose the sanction of a permanent injunction against the plaintiff precluding him from suing any of the defendants in this or any court without prior permission of this court.

I

On June 25, 2004, the plaintiff, a physician, filed a pro se Amended Complaint in this court against his former employer, Lee County Community Hospital, as well

as fourteen additional defendants. The background of the case is set forth in earlier opinions of the court. *See Payman v. Lee County Cmty. Hosp.*, No. 2:04CV00017, 2005 U.S. Dist. LEXIS 2923 (W.D. Va. Feb. 28, 2005); *Payman v. Lee County Cmty. Hosp.*, No. 2:04CV00017, 2005 U.S. Dist. LEXIS 2009 (W.D. Va. Feb. 14, 2005); *Payman v. Lee County Cmty. Hosp.*, 338 F. Supp. 2d 679 (W.D. Va. 2004).

In his Amended Complaint, Payman claimed that the defendants had conspired in "early" 2000 to "interfere with [his] contractual [Lee County Community Hospital] relationship and [his] reasonable professional opportunities with other hospitals, and to injure [him] in his PROFESSIONAL REPUTATION, IN BAD FAITH AND MALICIOUS INTENT." (Am. Compl. ¶ 3.) The defendants moved for summary judgment, and, after briefing, I granted these motions because the plaintiff failed to show that he had a viable claim of conspiracy.

In addition, the defendants served motions for sanctions against the plaintiff pursuant to Federal Rule of Civil Procedure 11(c)(1)(A), including a permanent injunction against the plaintiff. The motions have been briefed and are ripe for decision.

II

Rule 11 provides that by presenting a pleading to the court, an attorney or unrepresented party certifies

> that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances,—
>
> (1) [the pleading] is not being presented for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation;
>
> (2) the claims . . . and other legal contentions therein are warranted by existing law or by a nonfrivolous argument for the extension, modification, or reversal of existing law or the establishment of new law; [and]
>
> (3) the allegations and other factual contentions have evidentiary support or, if specifically so identified, are likely to have evidentiary support after a reasonable opportunity for further investigation or discovery.

Fed. R. Civ. P. 11(b). The defendants contend that the pleadings filed by the plaintiff violated this rule. In response, the plaintiff contends that the motions for sanctions are inappropriate because the defendants' allegations are "totally baseless and quite biased." (Pl.'s Mot. in Opp'n at 1.)

A

In determining whether sanctions are appropriate, I must first address whether the defendants complied with the procedural requirements of Rule 11. Under the

"safe harbor" provision of Rule 11, the party seeking sanctions must first serve, but not file, the motion on the party to be sanctioned. If the challenged pleading is not withdrawn or corrected within twenty-one days of service, the motion for sanctions may be filed for determination by the court. *See* Fed. R. Civ. P. 11(c)(1)(A).

In accordance with Rule 11, the defendants Lee Regional Medical Center ("LRMC"), Gowdagere K. Udayakumar (also known as "GKU Kumar"), and Susan Willis served Payman with their Motion for Sanctions on November 29, 2004, and subsequently filed their Second Amended Motion for Sanctions on April 8, 2005.[1] Payman did not withdraw or correct his Amended Complaint, and thus the procedural steps required by Rule 11 have been met as to the defendants' Second Amended Motion for Sanctions.

B

Having determined that the defendants met the procedural requirements of Rule 11, I now address whether the plaintiff's pleadings are sanctionable. I find that the plaintiff's Amended Complaint did violate Rule 11 because the allegations did not

---

[1] These defendants filed their first Motion for Sanctions (Doc. No. 57) on June 23, 2004, contending that the Motion for Judgment signed and filed by the plaintiff in state court and removed to this court was sanctionable under Rule 11. I denied this motion because there was no indication that the plaintiff was given the twenty-one-day "safe harbor" notice required by Rule 11. Thereafter, on June 25, 2004, the plaintiff filed an Amended Complaint. The defendants' present motion (Doc. No. 318) was filed with a letter documenting their compliance with the safe harbor rule.

have evidentiary support. While the fact that the plaintiff's claims did not survive summary judgment is alone insufficient to justify sanctions, *see Miltier v. Downes*, 935 F.2d 660, 664 (4th Cir. 1991), it is clear that the plaintiff had no objectively reasonable evidence to support his assertion that the defendants acted in "bad faith" and "malicious[ly]" toward him. (Am. Compl. ¶ 3.) In fact, the only supporting basis ever presented for these allegations are the plaintiff's claims of discrimination against his Bahá'í Faith, which he "supports" by submitting newspaper articles and other reports of discrimination against the Bahá'í in Iran.[2] The plaintiff has never provided objectively reasonable evidence to support these assertions.

The plaintiff should not be afforded any special leniency because he was proceeding pro se. He is an educated person who had researched the issues sufficiently to know and cite case law and statutes, and he has filed other cases pro se in this and other courts.

---

[2] These unsupported claims are similar to those dismissed by this court in previous cases. *See Payman v. Joyo,* No. 2:01CV00128, 2002 WL 1821635 (W.D. Va. Aug. 8, 2002) (dismissing defamation action on basis of statute of limitations); *Payman v. Abdrabbo,* No. 2:02CV00035, 2002 WL 31443212 (W.D. Va. Nov. 1, 2002) (granting summary judgment in conspiracy claim); *Payman v. Mirza,* No. 2:02CV00023, 2003 WL 751010 (W.D. Va. Mar. 3, 2003) (imposing sanctions on plaintiff after granting summary judgment in conspiracy claim).

C

Having held that sanctions are proper in this case, the next task is to determine the nature of such sanctions. Rule 11 allows directives of a nonmonetary nature, a monetary penalty payable into court, or reimbursement of some or all of the movant's reasonable attorneys' fees and other expenses "incurred as a direct result of the violation." Fed. R. Civ. P. 11(c)(2).

Because the offending party here is a nonlawyer, a sanction such as a reprimand, suspension from practice, or a requirement of additional continuing legal education, is inapplicable. The defendants request monetary sanctions, alleging that Lee County Community Hospital Liquidating Corporation ("LCCHLC") paid attorneys' fees for them in the amount of $22,333.50, and expenses in the amount of $1,230.50.[3] However, the defendants have not submitted itemized statements of these attorneys' fees and expenses.[4] The defendants request that any monetary sanctions

---

[3] Lee Regional Medical Center ("LRMC") is the name under which Pennington Gap HMA, Inc. ("PGHMA") does business. PGHMA acquired the assets of LRMC from Lee County Community Hospital, Inc. ("LCCH"). Thereafter, LCCH changed its name to LCCH Liquidating Corporation ("LCCHLC"). LCCHLC transferred most of its proceeds from the sale of the hospital to Lee County Community Foundation. LCCHLC agreed to indemnify and defend the defendants LRMC, Kumar, and Willis in the present action.

[4] The court previously directed that "[i]f the defendants seek attorneys' fees as a sanction, they must file an itemized statement of such fees and expenses." (Opinion, April 20, 2005, at 7.) Moreover, I have already ordered monetary sanctions of $61,408.07 against the plaintiff in this case.

-6-

be paid to Lee County Community Foundation, a non-profit Virginia corporation. Rather than imposing monetary sanctions, I find that under these circumstances a permanent injunction will be a sufficient deterrent. *See* Fed. R. Civ. P. 11(c)(2) (stating that sanctions may include "directives of a nonmonetary nature"). Therefore, I will impose an injunction preventing Payman from filing any actions against the defendants in any court, without first obtaining leave of this court.

III

A

The All Writs Act, 28 U.S.C.A. § 1651(a) (West 1994), grants federal courts the power to "limit access to the courts by vexatious and repetitive litigants . . . ." *Cromer v. Kraft Foods N. Am., Inc.*, 390 F.3d 812, 817 (4th Cir. 2004). Despite this power, such injunctive relief is an "extreme remedy" that should not be routinely granted. *Simmons v. Poe*, 47 F.3d 1370, 1382 (4th Cir. 1995). Moreover, such relief is inappropriate unless there is a real and immediate threat of future injury, in addition to objectionable past conduct. *See Rizzo v. Goode*, 423 U.S. 362, 372 (1976). If an injunction is granted, the order granting the injunction "shall set forth the reasons for its issuance[,] . . . be specific in its terms[,] . . . [and] describe in reasonable detail . . . the act or acts sought to be restrained . . . ." Fed. R. Civ. P. 65(d).

If the injunction is intended to include state court proceedings, the injunctive relief must not be granted unless it falls within one of the three exceptions listed in the Anti-Injunction Act, 28 U.S.C.A. § 2283 (West 1994), which must be narrowly interpreted. *See Bluefield Cmty. Hosp., Inc. v. Anziulewicz*, 737 F.2d 405, 408 (4th Cir. 1984). The third exception to the Anti-Injunction Act is where an injunction is necessary to "protect or effectuate [the court's] judgments." 28 U.S.C.A. § 2283 (West 1994). This exception "was designed to permit a federal court to prevent state litigation of an issue that previously was presented to and decided by the federal court[s]. It is founded in the well-recognized concepts of res judicata and collateral estoppel." *Chick Kam Choo v. Exxon Corp.*, 486 U.S. 140, 147 (1988).

In the present case, an injunction that includes state court proceedings is appropriate in order to protect this court's judgment. The claims at issue in this case are similar to those that the plaintiff has previously initiated. As another judge of this court recently held, "[e]ven though the exceptions to the Anti-Injunction Act should be narrowly interpreted, the claim that Payman has raised in this case was initially raised in this court several years ago." *Payman v. Wellmont Health Sys.*, No. 2:04CV00089, 2005 U.S. Dist. LEXIS 784, at *19 (W.D. Va. Jan. 20, 2005). Accordingly, this court may issue an injunction that includes state court proceedings

for the purpose of protecting the defendants from further litigating issues already decided by the court.

B

Because the court has the power to issue the injunction, the next step is to determine whether a prefiling injunction is substantively warranted. In deciding whether to grant the injunction, this court must weigh all the relevant circumstances:

> (1) the party's history of litigation, in particular whether he has filed vexatious, harassing, or duplicative lawsuits; (2) whether the party had a good faith basis for pursuing the litigation, or simply intended to harass; (3) the extent of the burden on the courts and other parties resulting from the party's filings; and (4) the adequacy of alternative sanctions.

*Cromer*, 390 F.3d at 818. Payman has filed claims making similar or identical allegations on numerous occasions, and has already been sanctioned three times by this court. It is clear that the issues have been litigated several times over and there is no basis for this lawsuit other than to harass the defendants. Moreover, Payman has substantially burdened this court and the Virginia state courts by his meritless litigation.

As pointed out in *Wellmont*, "alternative sanctions are unlikely to work in this case [because] Payman has been a 'frequent litigator' in the Western District of Virginia." *Payman*, 2005 U.S. Dist. LEXIS 784, at *21 (quoting *Payman*, 338 F.

-9-

Case 2:04-cv-00017-JPJ-PMS   Document 342   Filed 06/03/05   Page 9 of 12   Pageid#: 1671

Supp. 2d at 680 n.1 (noting that defendant Lee County Community Hospital alleged that Payman had filed "'at least' twenty-two lawsuits in state and federal courts, either pro se or represented by nine different attorneys,'" and listing four other cases that Payman had filed in that court)). This court previously sanctioned Payman $5,000 for filing two lawsuits without evidentiary support. *See Payman*, 2003 WL 751010, at *1 (sanctioning Payman for violations of Rule 11 because his allegations lacked evidentiary support). Even though Payman was sanctioned in that case he continued to litigate, and was therefore sanctioned $7,553.39. *Payman*, 2005 U.S. Dist. LEXIS 784, at *35.

As previously held, Payman's allegations in the present case lack any objectively reasonable evidence. Accordingly, because Payman has a pattern of filing frivolous lawsuits; does not have a good faith basis for continuing to prosecute this legal action; has burdened the legal system with other lawsuits concerning the same issues raised in this case; and alternative sanctions have not worked in the past, I find that the requirements for a prefiling injunction have been met.

C

The final issue that I must decide is the scope of the injunction. The defendants have asked the court to enter a permanent injunction against Payman that would bar

him from filing any future lawsuits against them in any court without the prior, express approval of this court.

In determining the scope of the injunction, it is necessary that "[t]he injunction not . . . effectively deny access to the courts, and the district court must give the litigant notice and the opportunity to be heard prior to granting the injunction." *Whitehead v. Viacom,* 233 F. Supp. 2d 715, 726 (D. Md. 2002). Because Payman had a chance to argue against the injunction in his brief responding to the motion, the notice requirement has been met. *See also Cromer*, 390 F.3d at 818-20 (discussing the notice requirement for prefiling injunctions). Moreover, because injunctions must be "narrowly tailored to fit the specific circumstances at issue," *Cromer,* 390 F.3d at 818, I will not enjoin Payman from filing any actions anywhere against the defendants or parties in privity with the defendants, as that would deny Payman access to the courts for potentially meritorious claims in the future. I will, however, grant an injunction preventing Payman from filing any actions against the defendants in any court, without first obtaining leave of this court. While the scope of this injunction is broad in that it covers filings in state court as well as in other federal courts, it is clearly necessary based on Payman's litigation history. Therefore, because of the specific circumstances of this case, such an injunction is narrowly tailored.

-11-

IV

For the foregoing reasons, the Second Amended Motion for Sanctions by the defendants will be granted and sanctions awarded in the form of a permanent injunction. A separate order consistent with this opinion will be entered forthwith.

                              DATED: June 3, 2005

                              /s/ JAMES P. JONES
                              Chief United States District Judge